UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RONALD HANSEN, and PETER McCOLLAUM, | § § § | |
| *Plaintiffs*, | § § | Civil Action No. 3:20-CV-00969-X |
| v. | § § § | |
| AFRICAN CONTRACT SOLUTIONS, INC. d/b/a GLOBAL STRATEGIES GLOBAL SOLUTIONS, and CHRISTOPHER STURM, | § § § § § § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is plaintiffs Ronald Hansen and Peter McCollaum's *Motion for Temporary Restraining Order And, in the Alternative, Either Preliminary Injunction or Appointment of Ancillary Receiver*, filed on April 27, 2020 [Doc. No. 4]. The plaintiffs are in federal court because defendants African Contract Solutions, Inc., doing business as Global Strategies Global Solutions (Global Strategies), and Christopher Sturm, removed the case to this Court on April 20, 2020. The Court ordered expedited briefing the day that the plaintiffs' motion was filed, and that motion became ripe on April 30, 2020.

For the following reasons, the Court does not possess subject matter jurisdiction to hear and decide this case. Therefore, the Court *sua sponte* **REMANDS** this case to the 191st District Court of Dallas County, Texas.[1]

---

[1] Under section 205(a)(5) of the E-Government Act of 2002 and the definition of "written opinion" adopted by the Judicial Conference of the United States, this is a "written opinion[] issued by

1

I.

On March 6, 2020, Hansen and McCollaum filed their Original Application for Receiver in the 191st District Court of Dallas County, Texas (state-court action). In the state-court action, the plaintiffs seek the appointment of a receiver over Global Strategies under Section 11.404 of the Texas Business Organizations Code. Hansen is a minority shareholder, board member, and Secretary of Global Strategies, while McCollaum is a putative shareholder. As detailed in the state-court receivership application, state-court motion for temporary restraining order, and motion for temporary restraining order before this Court, Hansen and McCollaum allege that many unauthorized acts and self-dealing by Christopher Sturm—majority shareholder, board member, and president of Global Strategies—warrant the court-appointment of a receiver.

After answering the receivership application and responding to the motion for temporary restraining order in state court, Sturm and Global Strategies removed the case to federal court on April 20, 2020—the very last day removal would be timely. The plaintiffs filed a renewed motion for temporary injunction one week later. That motion is ripe for the Court's review.[2]

---

the court" because it "sets forth a reasoned explanation for [the] court's decision." It has been written, however, primarily for the parties, to decide issues presented in this case, and not for publication in an official reporter, and should be understood accordingly.

[2] The Court is aware of the defendants' Motion to Strike [Doc. No. 17]. The Court relied on neither the motion to strike nor the filings the defendants sought to strike in reaching its holding that the Court lacks subject matter jurisdiction over this case.

II.

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims."[3] Other than under diversity jurisdiction, a federal court has subject matter jurisdiction, according to 28 U.S.C. § 1331, over civil cases only "arising under the Constitution, laws, or treaties of the United States."[4]

Sturm and Global Strategies removed to this Court under 28 U.S.C. § 1441(a) on the latter basis, under the framework established by the Supreme Court of the United States in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*.[5] *Grable* recognizes that "federal-question jurisdiction is invoked by and large by plaintiffs pleading a cause of action created by federal law," but that it is also invoked "in certain cases" when those "claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."[6] In other words, a federal question exists over a state-law claim when the federal issue is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance

---

[3] *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998).

[4] 28 U.S.C. § 1331.

[5] 545 U.S. 308 (2005). *See* 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.").

[6] *Grable*, 545 U.S. at 312.

approved by Congress."[7] When all four requirements are met, the Supreme Court holds that federal jurisdiction "is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts."[8]

Because the parties in this case do not possess diversity of citizenship and have not pled federal causes of action, the Court only has subject matter jurisdiction if the plaintiffs' pleadings satisfy the *Grable* test.[9] And so before turning to the motion for temporary restraining order on the merits, the Court *sua sponte* considers if it has jurisdiction based on the plaintiffs' receivership application seeking relief under Texas law.[10] As the Court does so, it is mindful that if "at any time before final judgment [in a removed case] it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."[11] This is because "[s]ubject-matter limitations on federal jurisdiction serve institutional interests. They keep the federal

---

[7] *Gunn v. Minton*, 568 U.S. 251, 258 (2013). *See Grable*, 545 U.S. at 314 (holding that federal courts have jurisdiction in cases where there is "a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities").

[8] *Gunn*, 568 U.S. at 258 (quoting *Grable*, 545 U.S. at 313–14).

[9] *See Novo Point, LLC and Quantec, LLC, v. Katz*, 2015 WL 1134733, at *4 ("Whether an action 'arises under' federal law and creates federal question jurisdiction over a case removed from state to federal court, or one originally filed in such court, ordinarily 'must be determined by reference to the "well-pleaded complaint."'" (quoting *Merrell Dow Pharms. v. Thompson*, 478 U.S. 804, 808 (1986))). "In the final analysis, when a plaintiff's pleadings set forth only state law claims, a federal district court has federal question jurisdiction to entertain the action only if '(1) the state law claims necessarily raise a federal issue or (2) the state law claims are completely preempted by federal law.'" *Id.* (quoting *Bernhard v. Whitney Nat'l Bank*, 523 F.3d 546, 551 (5th Cir. 2008)).

[10] *See McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n. 5 (5th Cir. 2005) (A "federal court may raise subject matter jurisdiction *sua sponte*.").

[11] 28 U.S.C. § 1447(c).

4

courts within the bounds the Constitution and Congress have prescribed. Accordingly, subject-matter delineations must be policed by the courts on their own initiative even at the highest level."[12]

### III.

After applying the *Grable* factors, the Court finds that it does not have subject matter jurisdiction to consider this case on its merits.

The Court will assume without deciding that the first two *Grable* factors are met: that a federal issue has been "necessarily raised" and "actually disputed."[13] That

---

[12] *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) (citing *Steel Co. v. Citizens for Better Envn't*, 523 U.S. 83, 94–95 (1998)).

[13] *Gunn*, 568 U.S. at 258. But the Court notes that insofar as it must only consider whether a *plaintiff's pleadings* necessarily raise the federal issue, this assumption is more tenuous. Whether the plaintiffs' receivership application necessarily raises a federal issue is less clear than whether the defendants necessarily raise the issue in their removal to this Court. *Compare* Original Application for Receiver ¶¶ 9, 12 (acknowledging that Global Strategies was intended to be "an enterprise managed by, employing, and benefitting Service-Disabled Veterans" and that it participates in the "Service-Disabled Veteran-Owned Small Business Concern Program") [Doc. No. 1-1, at 9–10] *with* Brief in Support of Motion for Temporary Restraining Order, at 31–32 (arguing that the appointment of a receiver under state law does not necessarily call into question Global Strategies' status in the Service-Disabled Veteran-Owned Small Business Concern Program) [Doc. No. 6]. *But* s*ee generally* Defendants' Joint Notice of Removal ¶¶ 10–13 [Doc. No. 1] (arguing that the plaintiffs' receivership application "necessarily raise[s]" the federal issue, that federal regulations are "necessarily implicated," and that the federal issue is "dispositive").

If the Court assumed or decided that the plaintiffs do not necessarily raise the federal issue but the defendants do, the Court notes that "it is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) (citing *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 12 (1983)). That said, there are circumstances when a "federal statute completely pre-empts [the state law] cause of action" and "a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality, based on federal law." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003).

As the Court notes later in this opinion, federal law does not completely preempt the plaintiffs' state-law receivership application. Even so, the defendants argue that federal law is necessarily implicated. To the extent that the Court agrees that the plaintiffs' receivership application necessarily implicates—and therefore necessarily raises—a federal issue, the Court will assume that it does so for the purpose of deciding the remaining of the *Grable* factors while mentioning this factor is not as clear-cut as the defendants maintain. What is more clear-cut, and does not warrant any additional qualifying analysis, is that the parties actually dispute the federal issue.

5

federal issue is Title 13, Chapter I, Part 125 of the Code of Federal Regulations (Part 125), the requirements of which—specifically 13 C.F.R. § 125.13's control requirements—the defendants maintain that Global Strategies' bylaws intend to follow.[14] Texas law also requires a court appointing a receiver to first find that "all other requirements of law are complied with."[15]

Even if this federal issue was necessarily raised and is actually disputed, the Court finds that, pursuant to the third and fourth *Grable* factors, it is not substantial and not capable of resolution in federal court without disrupting the federal-state balance approved by Congress. The Court addresses these two factors in turn.

First, the federal issue raised here is not substantial to this dispute. The defendants argue that the federal issue is "a substantial issue in the case" because it "is dispositive of the issues," specifically "whether a temporary restraining order that alters the control requirements of 13 C.F.R. § 125.13 can be entered and whether a state-law receiver can be appointed to control a [Service-Disabled Veteran-Owned Small Business]."[16] The plaintiffs argue, citing the absence of case law stating the

---

[14] *See* Defendants' Appendix in Support of Response to Motion for Temporary Restraining Order, Exhibit A-1 (Bylaws of African Contract Solutions), at App. 29 ("These Bylaws are intended to comply with the requirements of service-disabled veterans regulations. In the event of a conflict between the document and the service-disabled veteran regulations, the service-disabled veteran regulations take precedence.") [Doc. No. 12-1].

[15] TEX. BUS. ORGS. CODE § 11.404(b)(2). Additionally, before appointing a receiver, the state court must also determine that "circumstances exist that are considered by the court to necessitate the appointment of a receiver to conserve the property and business of the domestic entity and avoid damage to interested parties," and that "all other available legal and equitable remedies" are inadequate. *Id.* §§ 11.404(b)(1), (b)(3).

[16] Notice of Removal ¶ 12. *See* Defendants' Joint Brief in Response to Motion for Temporary Restraining Order ¶¶ 14–21 (arguing that "Plaintiffs' requested relief, if granted, would require [Global Strategies] and Sturm to violate certain federal regulations that are required for a business to maintain its status as a [Service-Disabled Veteran-Owned Small Business], and [Global Strategies'] Bylaws mandate compliance with those regulations.") [Doc. No. 12].

contrary, that it is possible to apply Texas's receivership statutes without calling into question Global Strategies' status as a Service-Disabled Veteran-Owned Small Business. Furthermore, the plaintiffs maintain that the Service-Disabled Veteran-Owned Small Business Concern Program notice and review process ensures that the defendants' alarm (that the state-court appointment of a receiver would lead to Global Strategies losing its program eligibility) is purely speculative at this juncture.

The Court finds that the defendants overstate "the importance in this case of federal law, which is merely tangential or incidental to the resolution of the issues in this case."[17] At first glance, it appears that it is necessary to construe Part 125 (specifically Part 125.13) to determine whether a Texas court is permitted to appoint a receiver for Global Strategies. But it is not necessary. Federal law does not require Global Strategies to maintain its Service-Disabled Veteran-Owned Small Business status—Global Strategies' bylaws apparently do. And so it is not necessary for a court, much less a federal court, to interpret a question of federal law. But it is necessary for a court to construe the bylaws of Global Strategies. Even if those bylaws implicate federal law, the plaintiffs' request for relief under Texas law does not raise a substantial federal question. And even if it does, it is not one that only a federal court must answer. State courts routinely consider federal law.[18] And this point leads the Court to the next *Grable* factor.

---

[17] *Novo Point, LLC v. Katz*, 2015 WL 1134733, at *7 (citing *Doe v. Episcopal Sch. of Dallas, Inc.*, 2011 WL 2601506, at *7 (N.D. Tex. June 30, 2011)).

[18] And even if it is necessary for the state court to interpret federal law to grant the plaintiffs' receivership application because Texas law requires state courts to determine that "all other requirements of law are complied with," TEX. BUS. ORGS. CODE § 11.404(b)(2), it is not necessary for the state court to interpret federal law at all if it chooses to deny plaintiffs' receivership application.

Second, the Court finds that even if the federal issue was substantial, it is not capable of resolution in federal court without disrupting the federal-state balance approved by Congress.  State receiverships are a common and historic practice, and they are under the historic and respected authority of state courts following state law.[19]  Congress has not superseded this practice or authority with federal law—in Part 125 or otherwise.  And Texas law expressly permits and empowers state courts to ensure that their receiverships comply with "all other requirements of the law."[20]  Absent another basis for the parties to invoke federal jurisdiction in this matter, the Court will respect the principles of federalism and defer to the state court's jurisdiction in this case.

IV.

It is for all these reasons that the *Grable* factors are not satisfied and that the Court does not possess subject matter jurisdiction to hear and decide this case.  Therefore, the Court *sua sponte* **REMANDS** this case to the 191st District Court of Dallas County, Texas.

---

It can deny the receivership application under the grounds listed in sections 11.404(b)(1) or (3), neither of which require the state court to consider federal law at all. *See id.* §§ 11.404(b)(1), (b)(3) (requiring the state court to also consider whether "circumstances exist that are considered by the court to necessitate the appointment of a receiver to conserve the property and business of the domestic entity and avoid damage to interested parties," and whether "all other available legal and equitable remedies" are inadequate).

[19] *See Janvey v. Alguire*, 2014 WL 12654910, at *3 (N.D. Tex. July 30, 2014) ("Equity receiverships in the United States can be traced back to the Chancery courts of England, and the relationship between bankruptcy and common law receiverships in the United States dates back to the 1800s.  Procedures for state receiverships existed in the 1800s to assist in foreclosure suits, among other functions, with many states codifying the pre-existing rules in equity surrounding their appointment and powers.") (citations omitted).

[20] TEX. BUS. ORGS. CODE § 11.404(b)(2).

**IT IS SO ORDERED** this 4th day of May 2020.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE